**RAJ V. ABHYANKER**, California SBN 233,284
raj@legalforcelaw.com
**LEGALFORCE RAPC WORLDWIDE**
1580 W. El Camino Real, Suite 10
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Plaintiffs,
LegalForce RAPC Worldwide, P.C.
LegalForce Inc., and Raj V. Abhyanker

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

UNLIMITED JURISDICTION

| | |
|---|---|
| 1. LEGALFORCE RAPC WORLDWIDE, P.C.; <br> 2. LEGALFORCE INC.; AND <br> 3. RAJ V. ABHYANKER, <br><br> Plaintiffs, <br><br> V. <br><br> 1. MYCORPORATION BUSINESS SERVICES, INC.; <br> 2. DEBORAH S. SWEENEY; <br> 3. STATE BAR OF CALIFORNIA; AND <br> 4. UNITED STATES PATENT & TRADEMARK OFFICE. <br><br> Defendants; <br><br> AND DOES 1-50. | Case No. 5:18-cv-142 <br><br> **COMPLAINT FOR:** <br><br> 1. DECLARATORY JUDGMENT; <br> 2. FEDERAL UNFAIR COMPETITION; <br> 3. CALIFORNIA UNFAIR COMPETITION; <br> 4. PROFESSIONAL NEGLIGENCE; AND <br> 5. BREACH OF FIDUCIARY DUTIES. <br> **Unlimited Civil Jurisdiction** <br><br> **JURY TRIAL DEMANDED** |

1.    Plaintiffs LegalForce RAPC Worldwide, P.C., LegalForce, Inc., and Raj V. Abhyanker (jointly, "LegalForce" or "Plaintiffs") submit the following complaint (the "Complaint") against MyCorporation Business Services, Inc. (operating the website MyCorporation.com, "MyCorporation"), and its principal owner attorney Deborah Sue Sweeney ("Sweeney" who is collectively referred to with MyCorporation as "MyCorporation Entities"). Plaintiffs join necessary defendants the United States Patent & Trademark Office ("USPTO") and the State Bar of California.

<b><u>NATURE OF ACTION</u></b>

2.    This Complaint is brought by Plaintiffs to expose the willful acts of signing trademark applications on behalf of applicants on USPTO forms by non-attorney staff at MyCorporation with respect to preparation and filing of trademark applications before the United States Patent & Trademark Office ("USPTO"). Through this act, MyCorporation harms the public interest; public consumers become susceptible to the risk of having trademark rights canceled by the USPTO should trademarks filed through MyCorporation ever be challenged by third-parties as described on the USPTO website **Exhibit H**.[1]

---

[1] USPTO website, "Applicants and registrants represented by excluded parties" Any power of attorney granted to the excluded party is void ab initio, meaning it was invalid from the start of any action taken by the excluded Party,
https://www.uspto.gov/trademark/trademark-updates-and-announcements/applicants-and-registrants-represented-excluded, last checked January 6, 2018.

3. In addition, MyCorporation harms the public interest by surrendering rights of privacy and copyright on behalf of their customers without their customers' express consent. In addition, by hiring non-attorneys to sign trademark applications, MyCorporation unfairly competes with the Plaintiff by having an unfair lower cost of services in their trademark process than what is required for licensed attorneys and law firms by the USPTO and State Bar of California. The Plaintiffs ask that the Court provide Declaratory Relief to clarify whether MyCorporation's manner of signing trademark applications constitute the practice of law and establish that either licensed attorneys should be able to compete on an equal playing field; or, in the alternative, MyCorporation be enjoined from and pay damages for its unauthorized practice of law and unfair competition and other claims with respect to signing and filing of trademark applications before the USPTO.

## **THE PARTIES**

### **The Plaintiffs**

4. Plaintiff LegalForce RAPC Worldwide, P.C. ("LegalForce RAPC Worldwide") is a law firm wholly owned by Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar.   The Firm practices patent and trademark law before the USPTO with a principal

place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, and a law office at 446 E. Southern Avenue Tempe Arizona 85282.

5. Plaintiff LegalForce, Inc. is a Delaware corporation offering law firm automation and free trademark search services through its website Trademarkia.com with a principal place of business at 1580 W. El Camino Real Suite 9, Mountain View California 94040.

6. Plaintiff Raj Abhyanker is a California licensed attorney practicing patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, is the sole shareholder of Plaintiff LegalForce RAPC Worldwide and is a CEO of Plaintiff LegalForce, Inc.

**The Defendants**

7. MyCorporation Business Services, Inc. is a Delaware corporation ("MyCorporation") with a principal place of business at 26025 Mureau Rd Ste 120, Calabasas, CA 91302-3180.   Upon reason and belief, MyCorporation Business Services, Inc. is not a law firm in the United States and is not authorized to practice law in any state.  MyCorporation Business Services, Inc. is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

8. Defendant Deborah Sweeney ("Sweeney") is an owner and Chief Executive Officer of MyCorporation Business Services, Inc, and a licensed California attorney, having a principal place of business at 26025 Mureau Rd Ste 120, Calabasas, CA 91302-3180.

9. Defendant the State Bar of California is the agency responsible governing the conduct of the licensed attorneys and bringing enforcement actions against entities engaging in the unauthorized practice of law in the State of California. Accordingly, it is named as a necessary defendant as it governs the conduct of California licensed attorneys, with a principal place of business at 180 Howard Street, San Francisco CA 94105.

10. Defendant the United States Patent & Trademark Office ("USPTO"), a branch of the United States Department of Commerce, is being added as a necessary defendant as it governs the conduct of U.S. state licensed attorneys and registered patent attorneys before the United States Patent & Trademark Office, with a principal place of business at 600 Dulany Street, Alexandria VA 22314. The United States Patent & Trademark Office also maintains a Silicon Valley office located at 26 S 4th St, San Jose, California 95112.

11. DOES 1-50 are entities that participated in the transactions complained of herein in ways which are unknown to Plaintiffs. The true names, capacities, nature, and extent of participation in the alleged activities by DOES 1-50,

inclusive, are unknown to Plaintiffs and therefore Plaintiffs sue these Defendants by such fictitious names.   Plaintiffs will amend the complaint to allege their true names and capacities when ascertained.

## BACKGROUND OF THE PARTIES

12.   Plaintiff LegalForce RAPC Worldwide is a law firm wholly owned by Plaintiff Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar.   The Firm practices patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, and a law office at 446 E. Southern Avenue Tempe Arizona 85282.

13.   The website Trademarkia.com was created by the law firm of LegalForce RAPC Worldwide in 2009 but was spun off into a separate entity.   Plaintiff LegalForce RAPC Worldwide is the sole provider of legal services through the website Trademarkia.com with respect to trademark filings before the USPTO.

14.   LegalForce RAPC Worldwide employs, full time, more than ten (10) U.S. licensed trademark attorneys in its California and Arizona offices who substantially limit their practice to trademark law before the USPTO, and who are supported by legal support staff globally including in India, China, Poland, the United Kingdom and South Africa.   LegalForce RAPC Worldwide represents more than 10,000 clients from all over the United States and world,

including over a thousand clients from the State of California.

15.  LegalForce RAPC Worldwide is the largest law firm filer of trademarks before the USPTO in each of the last five years.  The firm maintains interest on Lawyer Trust Account (IOLTA) trust accounts for all client funds, conducts robust conflict checks, and currently employs two former USPTO trademark examining attorneys.  It has never been disciplined by the USPTO or the State Bar of California.   At least two of its former attorneys are currently working as USPTO trademark examining attorneys after leaving LegalForce RAPC, and a number of its former associate attorneys or legal assistants have been hired in trademark and IP departments of leading Big Law IP firms including Orrick, Perkins Coie, Pillsbury Winthrop, DLA Piper, and Wilson Sonsini Goodrich & Rosati as well as in legal departments at leading technology companies, including Google, Inc., Facebook, Inc., Apple, Inc., and Electronic Arts, Inc.

16.  Plaintiff LegalForce, Inc. is a Delaware corporation offering law firm automation and free trademark search services through its website Trademarkia.com with a principal place of business at 1580 W. El Camino Real Suite 9, Mountain View California 94040.  The Chief Executive Officer (CEO) and co-founder of Plaintiff LegalForce, Inc. is Plaintiff Raj Abhyanker.  Plaintiff LegalForce, Inc. makes no revenue from preparation and filing on U.S. trademark applications.   It receives a flat monthly technology licensing revenue

from Plaintiff LegalForce RAPC Worldwide independent of the legal services revenue secured by the firm LegalForce RAPC Worldwide through the Trademarkia.com website.

17.    Plaintiff Raj Abhyanker is a California licensed attorney  (Bar No. 233,284) practicing patent & trademark law before the USPTO (USPTO Reg. No. 45,474) with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040. Raj is the sole shareholder of Plaintiff LegalForce RAPC Worldwide and is a CEO of Plaintiff LegalForce, Inc.   In 2013, he was named an American Bar Association Journal "Legal Rebel," an "annual honors program for the change leaders of the legal profession"[2] and a member of the Fastcase 50, an annual award that "recognizes 50 of the smartest, most courageous innovators, techies, visionaries, and leaders in the law."[3]

18.  MyCorporation Business Services, Inc. is a Delaware corporation ("MyCorporation") with a principal place of business at 26025 Mureau Rd Ste 120, Calabasas, CA 91302-3180.   Upon reason and belief, MyCorporation Business Services, Inc is not a law firm in the United States and is not authorized to practice law in any state.  MyCorporation Business Services, Inc is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.   MyCorporation was sold to

---

[2] http://www.abajournal.com/magazine/article/2013_legal_rebels_a_banner_year
[3] http://www.fastcase.com/fastcase50-winners-2013.

publicly traded Intuit, Inc., maker of the popular QuickBooks® software and TurboTax® on November 21, 2005 for twenty million dollars ($20,000,000) in cash from Nellie Akalp and her attorney Deborah Sweeney.  (**Exhibit J**).

19.  Defendant Deborah Sweeney ("Sweeney") is an owner and Chief Executive Officer of MyCorporation Business Services, Inc, and a licensed California attorney (Bar No. 201,659), having a principal place of business at 26025 Mureau Rd Ste 120, Calabasas, CA 91302-3180.   Sweeney repurchased MyCorporation from Intuit, Inc. in July 2009.  (**Exhibit K**).

20. Defendant the State Bar of California is the agency responsible governing the conduct of the licensed attorneys and bringing enforcement actions against entities engaging in the unauthorized practice of law in the State of California. Accordingly, it is named as a necessary defendant as it governs the conduct of California licensed attorneys, with a principal place of business at 180 Howard Street, San Francisco CA 94105.

21.  Defendant the United States Patent & Trademark Office ("USPTO"), a branch of the United States Department of Commerce, is being added as a necessary defendant as it governs the conduct of U.S. state licensed attorneys and registered patent attorneys before the United States Patent & Trademark Office, with a principal place of business at 600 Dulany Street, Alexandria VA 22314.  The United States Patent & Trademark Office also maintains a Silicon

Valley office located at 26 S 4th St, San Jose, California 95112.

## JURISDICTION AND VENUE

22.   This Complaint arises under the laws of the United States, 15 U.S.C. §1125 *et seq.*  This Court has original jurisdiction of this action under 28 U.S.C. §1331 because at least some of the claims alleged herein arise under federal law. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over any non-federal claims because such claims are so related as to form part of the same case or controversy.  Moreover, Plaintiffs have standing to their California state claims under the California Business and Professions Code in accordance to California appellate case law in *Higbee v. Expungement Assistance Services*.[4]

23.  This Court has personal jurisdiction over MyCorporation because the defendants solicit, transact and does business in California and this District via its website and at least one toll-free telephone number, a substantial part of the wrongful acts or omissions complained of herein occurred in this District. MyCorporation purposefully directed its activities toward this District when it willfully and specifically targeted consumers here and a substantial part of the harm was felt in this District.

---

[4] 214 Cal. App. 4th 544 *; 153 Cal. Rptr. 3d 865 **; 2013 Cal. App, in which the court concluded that the attorney alleged an identifiable trifle of injury sufficient to withstand a demurrer. The attorney alleged that he suffered losses in revenue and asset value and was required to pay increased advertising costs specifically because of the provider's unlawful business practices. To have standing under the UCL, the attorney was not required to have engaged in business dealings with the provider. The court saw no reason why the alleged violation of statutes concerning the unauthorized practice of law could not serve as a predicate for the attorney's UCL action. According to the attorney, the provider's unlawful business practices had taken customers away from him.

24.   Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. §§ 1391 (b) and (c).

## HARM TO PUBLIC INTEREST

25.  Through its acts of signing federal USPTO trademarks, MyCorporation harms the  "public interest" in that public consumers become susceptible to the risk of unenforceable U.S. trademarks signed and filed by unlicensed, un-trained, and uninformed non-lawyers.

26. Since MyCorporation Business Services, Inc is not a "law firm", then it is necessarily a non-lawyer that operates beyond the reach of protections built into the legal profession. Because regulatory protections are built into the legal profession, but no regulatory protections are in place for online legal services, consumers are worse off when their U.S. trademark applications are signed by non-attorneys at MyCorporation than by licensed attorneys at Plaintiff LegalForce RAPC Worldwide.

27. Through its acts of signing trademark applications on behalf of customers when filing trademarks, MyCorporation harms the public interest in that consumers become susceptible having their trademarks canceled by the USPTO should trademarks filed through MyCorporation ever be challenged by third-parties as described on the USPTO website **Exhibit H**.[5]

---

[5] USPTO website, "Applicants and registrants represented by excluded parties" Any power of attorney granted to the excluded party is void ab initio, meaning it was invalid from the start of any action taken by the excluded Party,

28. In addition, MyCorporation harms the public interest by surrendering rights of privacy and copyright on behalf of their customers without their customers' express consent. The Plaintiffs are bound to the rules governing the legal profession and USPTO, and that those rules are designed to protect consumers. If it in fact achieves what it sets out to disclaim, MyCorporation.com's disclaimer (**Exhibit I, Section 1**) and privacy policy (**Exhibit I, Section 3**) demonstrate that there is some merit to the argument that allowing *only* licensed attorneys to sign on behalf of clients benefits consumers by guaranteeing protections built into the legal profession.

29. The TMExpress.com website includes disclaimers:

30. "MyCorporation is a Document Filing Service and CANNOT provide you with legal or financial advice." (**Exhibit I, Section 1**).

31. "It is presented with the understanding that MyCorporation is not engaged in rendering legal, accounting or other professional services." (**Exhibit I, Section 1**).

32. "This Site Is Not A Substitute For Legal Counsel…" (**Exhibit I, Section 3**).

33. "The materials, information and links posted on the Site are provided for public informational purposes only, and do not constitute individualized legal

---

https://www.uspto.gov/trademark/trademark-updates-and-announcements/applicants-and-registrants-represented-excluded, last checked January 6, 2018.

advice." (**Exhibit I, Section 3**).

34. "The information on the Site is only provided with the understanding that MyCorporation and its affiliates are not engaged in rendering legal or other professional services." (**Exhibit I, Section 3**).

35. "This information is not a substitute for the advice of a competent legal or other professional." (**Exhibit I, Section 3**).

36. "When using our Services, you will be acting as your own attorney." (**Exhibit I, Section 3**).

37. "By providing you with this service, MyCorporation, its advisors, agents, representatives, and employees are not rendering any legal or otherwise professional advice or service, and no representations or warranties, express or implied, are given regarding the legal or other consequences resulting from the use of our Services, including but not limited to information, content and/or forms." (**Exhibit I, Section 3**).

38. "MyCorporation, its advisors, agents, representatives, and employees are not engaged in the practice of law and cannot provide you with legal advice." (**Exhibit I, Section 3**).

39. "Although MyCorporation expends great efforts and respects the confidential nature of the information you are submitting to us, NO SPECIAL RELATIONSHIP or privilege exists between MyCorporation and you, including

but not limited to any Attorney-Client relationship that might exist had you consulted with a licensed attorney." (**Exhibit I, Section 3**).

40. By renouncing the attorney-client relationship and purporting to provide legal information rather than legal advice, MyCorporation.com sidesteps professional responsibilities governing the legal profession and avoids professional malpractice liability.

41. The Plaintiffs emphasize that MyCorporation.com avoids the responsibilities of law practice by characterizing its services as "self-help" for pro se litigants and maintaining that the website cannot substitute for an attorney, without regard to the USPTO's definitions of practice of Law before the USPTO. MyCorporation.com's employees are trained to sign U.S. trademark applications on behalf of applicants and waive their rights to privacy. Despite this, if taken at face value, MyCorporation.com's disclaimer and privacy policy allow it to operate free from the confines of ethical rules enforceable upon attorneys.

42. Plaintiffs further argue that by falling outside the existing regulatory space for legal services—where regulations are designed by and applied to licensed lawyers—MyCorporation.com Entities deny consumers redress that they would otherwise have by instead retaining a law firm.

43. In addition, communications with the MyCorporation.com's website are

protected only by the company's Privacy Policy, not the attorney-client privilege or work product doctrine of Plaintiff LegalForce RAPC Worldwide. MyCorporation.com has no duty of confidentiality, which would otherwise prevent an attorney from revealing information relating to the representation. Under the existing regulatory structure, MyCorporation.com also operates beyond the reach of comparable disciplinary authorities for signing documents and waiving customer rights on USPTO trademark filing forms.

44. Upon reason and belief, deceptive advertising is another particularly relevant problem for many customers using MyCorporation.com.   Plaintiffs argue that if MyCorporation.com were a law firm, its practices would be disciplined by potential violations for communicating false or misleading information about its signature policies with respect to U.S. trademarks.

45. Moreover, Plaintiffs point out that MyCorporation.com limits its own liability for problems arising from its signature on U.S. trademarks on behalf of customers in ways impermissible for practicing lawyers. By operating outside the professional rules, MyCorporation.com bypasses the duties of competence and diligence required of all lawyers practicing law—duties which, if violated, could give rise to malpractice claims.

46. A comprehensive liability limitation clause requires that customers hold MyCorporation.com harmless for any "damages for loss of profits, business

interruption, costs of procurement of substitute goods or services or for any claim against you by any other party, or other pecuniary loss". (**Exhibit I, Section 3**). Without a lawyer to fall back on, customers relying on MyCorporation.com may sometimes fail to comply with jurisdiction-specific requirements, resulting in an increase of reliance on lawyers conducting post-mortem fixes to remedy problems caused by signatures by MyCorporation on behalf of their customers.  Though the disclaimer is not guaranteed to absolve MyCorporation.com of all liability, it makes it more difficult for clients to avoid shouldering liability for costly errors in legal documentation after MyCorporation signs USPTO forms on behalf of its customers.

**ETHICS RULES RELEVANT TO ALL CLAIMS**

I.    APPLICABLE RULES AND REGULATIONS ON THE PRACTICE OF LAW BEFORE THE USPTO.

USPTO RULES

47.  **37 CFR 11.18(a) - Personal Signature on each piece of correspondence filed at the USPTO.** (a) For all documents filed in the Office in patent, trademark, and other non-patent matters, and all documents filed with a hearing officer in a disciplinary proceeding, except for correspondence that is required to be signed by the applicant or party, each piece of correspondence filed by a practitioner in the Office must bear a signature, personally signed or

inserted by such practitioner, in compliance with § 1.4(d) or § 2.193(a) of this chapter. (**Exhibit A**).

48. **37 CFR 11.18(b)(1) - Certification by practitioner or non-practitioner based on own knowledge and believed to be true, and penalty for false, fictitious, or fraudulent statement or representations.** (b) By presenting to the Office or hearing officer in a disciplinary proceeding (whether by signing, filing, submitting, or later advocating) any paper, the party presenting such paper, whether a practitioner or non-practitioner, is certifying that (1) All statements made therein of the party's own knowledge are true, all statements made therein on information and belief are believed to be true, and all statements made therein are made with the knowledge that whoever, in any matter within the jurisdiction of the Office, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or knowingly and willfully makes any false, fictitious, or fraudulent statements or representations, or knowingly and willfully makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry, shall be subject to the penalties set forth under 18 U.S.C. 1001 and any other applicable criminal statute, and violations of the provisions of this section may jeopardize the probative value of the paper. (**Exhibit A**).

49. **37 CFR 11.18(b)(2) - Duty to verify that adequate evidentiary**

**support.** To the best of the party's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (i) The paper is not being presented for any improper purpose, such as to harass someone or to cause unnecessary delay or needless increase in the cost of any proceeding before the Office; (ii) The other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (iii) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (iv) The denials of factual contentions are warranted on the evidence, or if specifically so identified, are reasonably based on a lack of information or belief. (**Exhibit A**).

50. **37 CFR 11.18(b)(2) - Sanctions and disciplinary action by USPTO for failure to personally verify after inquiry reasonable under the circumstances.** (c) Violations of any of paragraphs (b)(2)(i) through (iv) of this section are, after notice and reasonable opportunity to respond, subject to such sanctions or actions as deemed appropriate by the USPTO Director, which may include, but are not limited to, any combination of -(1) Striking the offending paper; (2) Referring a practitioner's conduct to the Director of Enrollment and Discipline for appropriate action; (3) Precluding a party or practitioner from

submitting a paper, or presenting or contesting an issue; (4) Affecting the weight given to the offending paper; or (5) Terminating the proceedings in the Office. (d) Any practitioner violating the provisions of this section may also be subject to disciplinary action. (**Exhibit A**).

51. **37 CFR §11.503 – Duty to supervise non-lawyers.**  With respect to a non-practitioner assistant employed or retained by or associated with a practitioner: (b) A practitioner having direct supervisory authority over the non-practitioner assistant shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the practitioner; and (c) A practitioner shall be responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner if: (1) The practitioner orders or, with the knowledge of the specific conduct, ratifies the conduct involved.(**Exhibit B**).

52. **37 CFR §11.505 – Unauthorized Practice of Law.**  A practitioner shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so. (**Exhibit B**).

53. **37 CFR §11.107 – Conflict of interest.**    (a) Except as provided in paragraph (b) of this section, a practitioner shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:  (1) The representation of one client will be directly adverse to

another client; or (2) There is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person or by a personal interest of the practitioner. (**Exhibit B**).

54. **37 CFR §11.115 - IOLTA trust account.** A practitioner shall hold property of clients or third persons that is in a practitioner's possession in connection with a representation separate from the practitioner's own property. Funds shall be kept in a separate account maintained in the state where the practitioner's office is situated, or elsewhere with the consent of the client or third person. (**Exhibit B**).

55. **37 CFR §11.118(b)** – Even when no client-practitioner relationship ensues, a practitioner who has had discussions with the prospective client shall not use or reveal information learned in the consultation, except as § 11.109 would permit with respect to information of a former client. (**Exhibit B**).

56. There are other counterpart state court rules in before the California State Bar, not reprinted here, with largely similar restrictions.

I. USPTO'S DEFINITION OF UNAUTHORIZED PRACTICE OF LAW FOR TRADEMARK MATTERS BEFORE THE USPTO.

57.   Consulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document.

(**Exhibit L**).

58.   Preparing or prosecuting an application, response, post-registration maintenance document, or other related document.  (**Exhibit L**).

II.   USPTO'S DEFINITION OF LEGAL ADVICE FOR TRADEMARK MATTERS BEFORE THE USPTO.

59.  Conducting pre-filing searches for potentially conflicting trademarks. (**Exhibit M**).

60.  Analyzing or pre-approving documents before filing.  (**Exhibit M**).

61.  Advising applicants on substantive examination issues, such as the acceptability of specimens and classification of goods and services.  (**Exhibit M**).

CALIFORNIA CIVIL CODE

62.  **California Business and Profession §6125 – Unlawful Practice of Law.**  No person shall practice law in California unless the person is an active member of the State Bar. (**Exhibit B**).

IV.  MYCORPORATION VIOLATES UNAUTHORIZED PRACTICE OF LAW RULES OF THE USPTO BY SIGNING DOCUMENTS USING NON-ATTORNEYS.

63.  Plaintiffs requested the filing of a trademark application through the MyCorporation.com website.  Email addresses of raj@legalforcelaw.com for

customer RAJ ABHYANKER was used.  (**Exhibit N**).

64. A real trademark related to business of Plaintiffs was used for was applied for federal intent-to-use registration through the MyCorporation website. PACERALERT is trade name of a new public docket alert system for federal litigation that Plaintiff Raj Abhyanker intends to use in commerce.    The Plaintiffs paid $149 through the MyCorporation website.  (**Exhibit O**).

65. For the prospective trademark, PACERALERT, MyCorporation did not provide legal advice to the Plaintiff in that they did not assist with the description of goods and service or class selection. Since the Plaintiff did not request it, the "trademark search" phase was not performed for the PACERALERT trademark. Upon reason and belief, this search is procedurally performed by non-lawyer staff without review from a licensed attorneys in violation of the USPTO's practice of law definition in **Exhibits A and B**. MyCorporation's non-attorney representative suggested that the USPTO would select classification and call the Plaintiff if there were any problems with the description. (compare **Exhibit O** v. **Exhibit Q**).

66. During the workflow, MyCorporation asked the Plaintiff Raj Abhyanker to sign a signature consent electronically which reads :

/RAJ ABHYANKER/

I acknowledge that I have read and agree to be bound by the MyCorporation® Terms of Use Agreement. I specifically acknowledge

that neither MyCorporation®, nor any of its employees or agents have provided me with any legal services or legal advice. I also authorize MyCorporation® to affix my electronic signature to documents, where applicable. Further, if ordered, I authorize MyCorporation® to automatically bill my credit card each year for Registered Agent Service, MyIncGuard®, Annual Report Service or MaintainMyBiz® unless written notification of cancellation and proof of resignation is provided in the time frame stated by MyCorporation®. I acknowledge that once documents are successfully submitted to the state, if applicable, I am not entitled to a refund of any state/government filing fees, MyCorporation® service fees, or shipping & handling fees. (**Exhibit O**).

67. However this disclaimer is not on the USPTO website, it is found on the workflow of the MyCorporation trademark service and on the follow up receipt (**Exhibit O**).  Most importantly, the signature consent portion of this disclaimer is generic, and does not provide any permission to MyCorporation to disclaim privacy rights on behalf a trademark applicant before the USPTO, does not provide any kind of representations by any customer of MyCorporation that there is any bonafide intent to use a trademark in commerce, and that the trademark filing request is brought in good faith.  Despite this, MyCorporation's non-attorney staff signed the PACERALERT trademark directly on the USPTO website using a fraudulent signature of Plaintiff Raj Abhyanker by fraudulently signing "/raj abhyanker/" on the USPTO trademark filing form with the

fraudulent representation that the signatory's name is "Raj Abhyanker". (**Exhibit Q**).

68. What is also troubling about this fraudulent signature is that MyCorporation did not even check with Plaintiff Raj Abhyanker any of the warranties and representations its non-lawyers "check clicked off" with respect to this filing when fraudulently signing "/raj abhyanker/" on the USPTO trademark filing form with the fraudulent representation that the signatory's name is "Raj Abhyanker". (**Exhibit Q**).    Specifically, MyCorporation's non-lawyer staff fraudulently represented to the government without checking with the Plaintiff Raj Abhyanker that:

69. The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered; (**Exhibit Q**).

70. The mark is in use in commerce on or in connection with the goods/services in the application; (**Exhibit Q**).

71. The specimen(s) shows the mark as used on or in connection with the goods/services in the application; (**Exhibit Q**).

72. To the best of the signatory's knowledge and belief, the facts recited in the application are accurate. (**Exhibit Q**).

73. To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in

commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.  (**Exhibit Q**).

74. To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support. (**Exhibit Q**).

75. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.  (**Exhibit Q**).

76. Upon reason and belief, MyCorporation has signed off on these rights not just for the Plaintiff's PACERALERT trademark, but for thousands of trademarks per year, each year, for more than ten (10) years.   Upon reason and belief, MyCorporation practiced law when it signed the USPTO form to proceed with the filing on behalf of Raj Abhyanker.   MyCorporation then proceeded to use the Plaintiff Raj Abhyanker's credit card to charge $275 in government fees in advance of filing. (**Exhibit P**, and **Exhibit R**).

77. Moreover, MyCorporation unilaterally waived Plaintiffs Raj Abhyanker's

right to privacy with respect to the PACERALERT trademark by having non-attorney staff sign off rights while paying government fees by check box clicking off the following on the USPTO government fee form shown in **Exhibit G** including : (1) Waiving Plaintiffs Raj Abhyanker's right to cancel the filing or refund the government fee paid on their behalf;  (2) Waiving right to confidentiality of name, phone number, e-mail address, and street address of Plaintiff Raj Abhyanker with respect to their trademarks; and  (3) Representing to the federal government, without checking with Plaintiff Raj Abhyanker has the authority to grant, and is granting, the USPTO permission to make the information available in its online database and in copies of the application or registration record. (**Exhibit G**).

78. Upon reason and belief MyCorporation enters the customer's information directly into the USPTO website and does not request a link from the USPTO to the signature form using an internal MyCorporation non-attorney staff's email ID (**Exhibit C**) in order to covertly avoid scrutiny from the State Bar of California or the USPTO.  **MyCorporation does not share this USPTO link to the customer to sign**, and accordingly did not share it with Plaintiff Abhyanker for the PACERALERT trademark application.

79. MyCorporation signs the USPTO link approving the trademark using non-attorney staff based on the partial customer's approval on the

MyCorporation.com website (**Exhibit O**), upon reason and belief.   The reason that the approval is partial is because the MyCorporation.com website does not ask the customer to waive their privacy protections.   **MyCorporation unilaterally waives privacy protections and underlying copyright publication rights to the USPTO**.   Specifically, MyCorporation's non-lawyer staff again go to a different USPTO link emailed to MyCorporation by the USPTO which expressly waives each customer's right to privacy and has MyCorporation attest that MyCorporation has the authority to grant the USPTO permission to make information submitted available on its online database regardless of the underlying copyrights (**Exhibit G**).

80. Moreover, upon reason and belief, MyCorporation maintains no client trust account (IOLTA account) for trademark matters, uses non-lawyer assistants to evaluate specimens of use in commerce for authenticity, and performs no conflict checks against other customers.

81. In contrast, as a law firm, Plaintiff LegalForce RAPC Worldwide and its licensed attorneys must conduct conflict checks with existing clients prior to taking on representation of prospective clients.[6]   It must place client funds in an

---

[6] **37 CFR §11.107 – Conflict of interest.**   (a) Except as provided in paragraph (b) of this section, a practitioner shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:  (1) The representation of one client will be directly adverse to another client; or (2) There is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person or by a personal interest of the practitioner.

IOLTA trust account prior to work being started.[7]   It must hire U.S. licensed attorneys to counsel clients on trademark classification selection, modifying description of goods and services, reviewing specimens provided by its clients for completeness and applicability to the selected classification, and review for veracity before having attorneys themselves personally sign off on documents.[8]

82. If Plaintiff LegalForce RAPC Worldwide and its licensed attorneys were to adopt a similar model as MyCorporation, it is very likely that the firm and its licensed attorneys would be disbarred and/or excluded from practicing law by the USPTO, any state in which they are licensed by a State Bar.

83. This is a real threat.   Recently, Matthew Swyers ("Swyers"), a former USPTO trademark examining attorney in private practice and founder of The Trademark Company, was excluded for practice by the USPTO for the conduct similar to MyCorporation's (**Exhibit D**).   Despite this, the USPTO is unable to stop Swyers from filing trademarks before the USPTO and he continues to file trademarks as described in United States District Court of Northern District of California - San Jose Division ("5:17-cv-7318") filed on December 28, 2017.  In addition, another attorney Tracy W. Druce ("Druce") was suspended for failure

---

[7] **37 CFR §11.115 - IOLTA trust account.** A practitioner shall hold property of clients or third persons that is in a practitioner's possession in connection with a representation separate from the practitioner's own property. Funds shall be kept in a separate account maintained in the state where the practitioner's office is situated, or elsewhere with the consent of the client or third person.

[8] **California Business and Profession §6125 – Unlawful Practice of Law.**  No person shall practice law in California unless the person is an active member of the State Bar.  **37 CFR §11.505 – Unauthorized Practice of Law.**  A practitioner shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

to supervise assistants even though the lawyer did not know of the conduct of his assistants signing documents on his behalf (**Exhibit E**).  Moreover, the USPTO also excluded from practice Leonard Tachner ("Tachner"), a suspended attorney whose corporation prepared and filed trademark applications while he was suspended on the grounds of unauthorized practice of law. (**Exhibit F**).

84. Unlike Swyers, Druce, and Tachner, upon reason and belief, the USPTO and State Bars have taken no similar action against MyCorporation. This double standard between attorneys and non-attorneys is a great injustice that harms both attorneys and the public at large.  Attorneys who have spent years going through law school, taking a difficult bar exam, maintaining an IOLTA trust account, and performing conflict checks **cannot** effectively compete against non-law firm competitors like MyCorporation on an even playing field.  It also lowers the standard of service to the public because MyCorporation customers rely on the legal advice given by non-attorneys.  For these reasons, an injunction and damages false advertising, unfair competition, malpractice, and other causes of action are sought.

85. For the above reasons, Plaintiffs submit that MyCorporation Entities violate the at least  following rules:

86. **37 CFR 11.18(a) - Personal Signature on each piece of correspondence filed at the USPTO.** Specifically, MyCorporation Entities

violate this rule because all documents filed in the USPTO in trademark matters, except for correspondence that is required to be signed by the applicant or party do not must bear a signature, **personally** signed or inserted by a licensed attorney, in compliance with § 1.4(d) or § 2.193(a) of this chapter. (**Exhibit A**).

87. **37 CFR 11.18(b)(1) - Certification by practitioner or non-practitioner based on own knowledge and believed to be true, and penalty for false, fictitious, or fraudulent statement or representations.** Specifically, MyCorporation Entities violate this rule by signing, filing and submitting U.S. trademark applications without verification, that their fraudulent signatures by non-attorneys represent that (1) All statements made therein of the party's own knowledge are true, all statements made therein on information and belief are believed to be true. (**Exhibit A**).

88. **37 CFR 11.18(b)(2) - Duty to verify that adequate evidentiary support.** Specifically, MyCorporation Entities violate this rule because it is not to the best of the non-attorney signer's knowledge, information and belief, formed after an inquiry reasonable under the circumstances that (i) The USPTO trademark application is not being presented for any improper purpose, such as to harass someone or to cause unnecessary delay or needless increase in the cost of any proceeding before the Office; (ii) The other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension,

modification, or reversal of existing law or the establishment of new law; (iii) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (iv) The denials of factual contentions are warranted on the evidence, or if specifically so identified, are reasonably based on a lack of information or belief. (**Exhibit A**).

89. **37 CFR §11.503 – Duty to supervise non-lawyers.** Specifically, attorney Sweeney violates this rule with respect to a non-practitioner assistant employed or retained by or associated Sweeney : (b) Sweeney did not make reasonable efforts to ensure that the non-attorney's conduct is compatible with the professional obligations of Sweeney as a member of the California Bar; and therefore Sweeny should be (c) responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by Sweeney because (1) Sweeney orders or, with the knowledge of the specific conduct, ratifies the conduct involved, upon reason and belief. (**Exhibit B**).

90. **37 CFR §11.505 – Unauthorized Practice of Law.** Specifically, attorney Sweeney violates this rule because she assists non-attorneys in violating rules with respect to the practice law. (**Exhibit B**).

91. There are other counterpart state court rules in before the California State Bar, not reprinted here, with largely similar restrictions.

V.  MYCORPORATION' MISLEADING GOOGLE, BING, AND OTHER

ONLINE ADVERTISING IS DAMAGING TO PLAINTIFFS' GOODWILL

AND MISLEADING TO THE PUBLIC WITH FALSE COMPARISONS TO

ATTORNEY LED SERVICES, AS SUCH ACTIONS CAUSING

IRREPARABLE HARM TO PLAINTIFFS.

92.  Plaintiff LegalForce RAPC Worldwide and Defendant MyCorporation are purchasers of online advertising including on Google and Bing per month for "how to register a trademark" (**Exhibit I, Section 4**) and "trademark application in the us" (**Exhibit I, Section 4**) related search terms.

93.  Moreover the advertising copy associated with these keywords is equally deceptive. MyCorporation uses terms such as "File Your Trademark Today-Protect your logo and brand" and " and "Register Your Trademark" (**Exhibit I, Section 5**) when in fact MyCorporation recklessly jeopardizes these rights on behalf of all its applicants by warranting statements to the federal government that it did not have an attorney verify (**Exhibit Q**).  To effectuate the service that is representing, Mycorporation must participate in the practice of law, as defined by the USPTO.

94.  Upon reason and belief, MyCorporation's non-attorney trademark filing service has threatened, and continues to threaten, Plaintiff LegalForce RAPC's business directly by competitively bidding against Plaintiff LegalForce RAPC

Worldwide on Google and Bing for the keywords during at least the last 5 years through deceptive advertising which are predicated on the unauthorized practice of law.  (**Exhibit Exhibits A, B, L and M**).

95.  MyCorporation is not a law firm or authorized to practice law in any state.  Moreover, upon reason and belief, MyCorporation is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

96.  Despite not being a law firm and despite not hiring any attorneys representing external clients, MyCorporation purchases advertisements whenever consumers search terms related to the practice of trademark law including for "how to register a trademark" (**Exhibit I, Section 4**) and "trademark application in the us" (**Exhibit I, Section 4**) related search terms. The advertising copy in the resulting advertisements is highly misleading, leading a consumer to believe that he or she will be competently assisted with preparing and filing a trademark.

97.  In contrast, rules for mandatory conflict checks, attorney client privilege, and storing client funds in IOLTA accounts have been adopted by every State Bar, for the explicit purpose of protecting clients. MyCorporation boasts about eschewing these long standing client protections.  While not having power of attorney, not holding attorney client privilege, and not conducting conflict

checks, yet still providing legal advice, MyCorporation's advertising copy is explicitly designed to wrongfully imply that avoiding conflict checks is a benefit to clients.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
DECLARATORY JUDGMENT
(Against all Defendants and DOES 1-50)

98. Plaintiffs incorporate herein by reference paragraphs **1-97** above.

99.  An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding MyCorporation Entities' unfair business practices and corporate ownership structure, false advertising, professional negligence, breach of fiduciary duty, and unauthorized practice of law.

100.    An actual controversy has arisen and now exists between Plaintiffs and Defendant USPTO regarding USPTO's rules disallowing Plaintiffs to sign trademarks using non-attorneys in the same manner as MyCorporation Entities. Numerous articles have been published by leading law firms and ethics scholars on the need for personal signature on government forms (**Exhibits S to V**).

101.  Plaintiffs have sought and received ethics counsel from highly respected ethics counsel informing them they should have human attorney or the clients directly sign off on trademark declarations and filing forms.  Moreover, outside counsel has informed Plaintiffs that the State Bar of California and the

USPTO will not likely to provide guidance in advance of changing operating models.

102.    In the alternate, an actual controversy has arisen and now exists between Plaintiffs and Defendant USPTO regarding USPTO's failure to prevent MyCorporation Entities from operating its business for the purpose of signing trademark applications before the USPTO.

103.    An actual controversy has arisen and now exists between Plaintiffs and the State Bar of California regarding the State Bar of California's rules disallowing Plaintiffs to sign USPTO trademark filing services using non-attorney staff in the same manner as MyCorporation Entities.    In the alternate, an actual controversy has arisen and now exists between Plaintiffs and the State Bar of California regarding the State Bar of California's failure to prevent MyCorporation Entities from operating its business for the purpose of engaging in the unauthorized practice of law with respect to U.S. trademark applications before the USPTO.

104.    As a California licensed law firm and a California licensed attorney, Plaintiffs LegalForce RAPC Worldwide and Raj Abhyanker have built robust practices to conduct conflict checks for client trademark matters, have had to maintain legal malpractice insurance, and have had to employ U.S. licensed attorneys to review and sign off on trademark matters filed before the United

States Patent & Trademark Office to avoid unauthorized practice of law challenges to their business.

105.   By not operating as a law firm, upon reason and belief, MyCorporation Entities conducts no conflict checks for client trademark matters, has not had to maintain legal malpractice insurance, and has not had to employ U.S. licensed attorneys to review and sign off on trademark matters filed before the USPTO to avoid unauthorized practice of law challenges to its business for its non-attorney trademark filing service.

106.   Being substantially owned by attorney Raj Abhyanker, Plaintiff LegalForce, Inc. has been unable to adopt the model of MyCorporation Entities for its  non-attorney trademark filing service to sign off on trademark applications before the United States Patent & Trademark Office and raise external capital without exposing itself to unauthorized practice of law challenges to its business and Chief Executive Officer Raj Abhyanker.

107.   Upon reason and belief, the State Bar of California and the USPTO may claim that they have not taken any action against MyCorporation Entities because MyCorporation operates covertly by not directly requesting signature forms on USPTO documents to forward to its customers (does not use **Exhibit C**).

108.   Upon reason and belief, the State Bar of California has failed to

discipline and/or appropriately regulate the conduct and practice of attorney Deborah Sweeney, Owner and CEO of MyCorporation, who is an active member of the California Bar.

109. Plaintiffs seek declaratory judgment from this Court because MyCorporation Entities continues to threaten Plaintiffs by competing with them for trademark filing online keywords while having lower cost non-attorneys do tasks required by attorneys. As a result, Plaintiffs have no recourse to compete without this Court providing clarity via this declaratory judgment action and instant causes of action. Plaintiffs have not been able to compete on an equal playing field with MyCorporation Entities with its non-attorney trademark filing service and are being denied equal protection in practicing their profession and for this reason seek this declaratory judgment.

110. Accordingly, Plaintiffs seek a declaratory judgment from this Court, declaring:

A. A licensed attorney is permitted to employ non-lawyer assistants to sign trademark declarations before the USPTO for clients, sign USPTO trademark applications sought to be filed with the USPTO by clients, and have non-attorneys sign off on privacy rights, surrender copyright interests to the USPTO, and pay government fees on behalf of clients who are represented by the licensed attorney when the clients expressly consent on an engagement letter

with the licensed lawyer.

B.  A licensed law firm is permitted to employ non-lawyer assistants to sign trademark declarations before the USPTO for clients, sign USPTO trademark applications sought to be filed with the USPTO by clients, and have non-attorneys sign off on privacy rights, surrender copyright interests to the USPTO, and pay government fees on behalf of clients who are represented by a lawyer of the law firm when the clients expressly consent on a website of the law firm or through an engagement letter with the licensed law firm.

C.  A legal technology C corporation organized in any state within the United States substantially owned by one or more California and USPTO licensed attorneys is permitted to employ non-lawyer assistants to sign trademark declarations before the USPTO for customers, sign USPTO trademark applications sought to be filed with the USPTO by customers, and have non-attorneys sign off on privacy rights, surrender copyright interests to the USPTO, and pay government fees on behalf of customers who are not represented by a lawyer when the customers expressly consent on a website of the legal technology C corporation.

**SECOND CLAIM FOR RELIEF**
FEDERAL FALSE & MISLEADING ADVERTISING AND UNFAIR
COMPETITION IN VIOLATION OF THE FEDERAL TRADE
COMMISSION ACT, 15 U.S.C. § 45, 15 U.S.C. § 52, 15 U.S.C. § 53
(Against MyCorporation Entities and DOES 1-50)

111.   Plaintiffs incorporate herein by reference paragraphs **1-110** above.

112.   The Federal Trade Commission Act prohibits any unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, and declares such acts or practices unlawful.

113.   MyCorporation is not a law firm in the United States and is not authorized to practice law in any state.  MyCorporation is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

114.   The Federal Trade Commission Act prohibits false and misleading advertising and prohibits advertisers like MyCorporation from making any claim, and directly or indirectly, in words or in substance, qualified or unqualified, that contain express or implied falsehoods.

115.   MyCorporation has threatened Plaintiff LegalForce RAPC Worldwide's business directly by misleading consumers and unfairly competing with Plaintiffs for numerous keywords related to U.S. trademark filing services (**Exhibit I, Section 4)**.   The conduct is unfair and unethical because MyCorporation makes it seem that MyCorporation can effectively prepare and file valid U.S. trademarks by employing non-attorneys to sign U.S. trademark applications on behalf of customers.

116.   MyCorporation's false and misleading advertisements have deceived a

substantial segment of the audience exposed to it, or have the capacity for such deception, and have influenced, or are likely to influence, consumer purchasing decisions.

117.    MyCorporation sells, offers for sale, distributes, and/or advertises goods and services to consumers that directly compete with Plaintiffs' sales of their own services and products.

118.    MyCorporation's conduct demonstrates an intentional, willful, and malicious intent to deceive consumers and unfairly compete with Plaintiffs.

119.    MyCorporation's false and misleading advertisements have caused and, unless enjoined, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law.   In addition, as a result of MyCorporation's false and misleading advertisements, Plaintiffs have been injured, including but not limited to, decline in sales and market share, loss of goodwill, and additional losses and damages.  Furthermore, MyCorporation has been unjustly enriched at the expense of Plaintiffs as a consequence of MyCorporation's false and misleading advertising.  Accordingly, Plaintiffs are entitled to injunctive relief and to recover actual damages, enhanced profits and damages, costs, MyCorporation's profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**THIRD CLAIM FOR RELIEF**
FEDERAL FALSE & MISLEADING ADVERTISING AND UNFAIR

COMPETITION IN VIOLATION OF §17200 *ET SEQ.* OF THE CALIFORNIA
BUSINESS AND PROFESSIONS CODE

(Against MyCorporation Entities and DOES 1-50)

120.    Plaintiffs incorporate herein by reference paragraphs **1-119** above.

121.    MyCorporation's false comparisons with Plaintiffs' attorney managed U.S. trademark service as being comparable to MyCorporation's non-attorney service through misleading advertising, as alleged above, constitute unfair competition in violation of Section §17200 *et seq.* of the California Business and Professions Code.

122.    MyCorporation's non-attorney trademark document specialists unlawfully assist customers by fraudulently signing documents to be filed before the United States Patent & Trademark Office, and filing trademarks before the United States Patent & Trademark Office.

123.    As a result of MyCorporation's wrongful acts, Plaintiffs have suffered and will continue to suffer loss of hundreds of thousands of dollars of income, profits and valuable business opportunities and if not preliminarily or permanently enjoined, MyCorporation will have unfairly derived and will continue to derive income, profits and business opportunities as a result of its wrongful acts.

124.    Pursuant to California Business and Professions Code Section §17200

*et seq.*, Plaintiffs seek an order of this Court preliminarily and permanently enjoining MyCorporation from continuing to engage in the unlawful, unfair and fraudulent acts or practices set forth herein, as well as compensatory damages and restitution.

### **FOURTH CLAIM FOR RELIEF**

CALIFORNIA FALSE & MISLEADING ADVERTISING IN VIOLATION OF
CAL. BUS. & PROF. CODE § 17500 *ET SEQ.* and § 17600 *ET SEQ.*
(Against MyCorporation Entities and DOES 1-50)

125.   Plaintiffs incorporate herein by reference paragraphs **1-124** above.

126.   MyCorporation's false comparisons with Plaintiffs' attorney managed U.S. trademark service as being comparable to MyCorporation's non-attorney service through misleading advertising, as alleged above, constitute unfair competition in violation of Section §17200 *et seq.* of the California Business and Professions Code.

127.   Beginning on a date unknown to Plaintiffs but likely within at least the eight years preceding the filing of the Complaint, MyCorporation, acting directly or indirectly with the intent to induce members of the public to engage MyCorporation's services and purchase MyCorporation's products, made or caused to be made, in violation of Business and Professions Code Section §17500, untrue or misleading statements in the state of California via its website, that include, but are not limited to, the following:

128.   MyCorporation is not a law firm in the United States and is not authorized to practice law in any state.   MyCorporation is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

129.   MyCorporation has threatened Plaintiff LegalForce RAPC Worldwide's business directly by misleading consumers searching Google and Bing for U.S. trademark filing services to non-attorney trademark landing pages. This creates unfair competition for Plaintiffs which file all trademarks of their clients before the USPTO with representation by licensed attorneys at LegalForce RAPC Worldwide's offices, in either California or Arizona.   The conduct is unfair and unethical because it misleads customers to selecting MyCorporation's services instead of those of the Plaintiffs based on fraudulent premises.

130.   While using AdWords to trigger and disseminate the misleading advertisements herein alleged, MyCorporation knew, or by the exercise of reasonable care should have known, that the advertisements were untrue and misleading and so acted in violation of Section §17500 of the Business and Professions Code.   MyCorporation expressly waives this confidentiality and privacy rights unilaterally without customer consent when paying government fees (**Exhibit G**).

131.   MyCorporation's   non-attorney   trademark   document   specialists unlawfully assist customers with fraudulently signing trademarks to be filed before the USPTO, and filing trademarks before the USPTO.

132.   MyCorporation has been unjustly enriched through its false and misleading advertising.

133.   Plaintiffs have lost business caused by the false and misleading MyCorporation advertisements as a result of at least one customer refusing to do business with Plaintiffs due to the fact that MyCorporation advertisements falsely implying that MyCorporation offers trademark filing services with the USPTO in an ethically compliant manner, upon reason and belief.

134.   Unless restrained by this court, MyCorporation will continue with its untrue and misleading advertising, as alleged above, in violation of Section §17500 of the Business and Professions Code and in violation of Section §17509 of the California Business and Professions Code, thus, tending to render judgment in the instant action ineffectual and will cause additional injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

135.   Pursuant to California Business and Professions Code Section §17500, Plaintiffs seek an order of this Court preliminarily and permanently enjoining MyCorporation from continuing to engage in the false and misleading advertising set forth herein, as well as compensatory damages and restitution.

136.   MyCorporation's business practices and acts, fully described above, constitute an unlawful practice of law and create false and misleading impressions on potential clients of Plaintiff LegalForce RAPC Worldwide.

137.   MyCorporation's business model and acts, including but not limited to its website and false and misleading advertising, constitute unfair practices, intentionally aimed at getting ahead of any competitors with lawful business conduct such as that of the Plaintiffs. The acts alleged herein continue to present a threat to Plaintiffs and average consumers, especially the ones with limited resources.

138.   MyCorporation's acts were, and are, likely to deceive an average consumer, and thus constitute unfair business practices as described herein.

139.   MyCorporation has engaged in unlawful, unfair and fraudulent business practices and damaged the public and Plaintiffs through the conduct alleged herein.

140.   Plaintiffs are informed, believe, and thereupon allege that MyCorporation's conduct as described herein was, and is, unlawful, unfair and/or fraudulent in violation of Section §17000 *et. sq.* of the California Business and Professions Code and has the potential to cause, and has in fact caused, confusion in the marketplace.

141.   Plaintiffs have been irreparably harmed and will continue to be

irreparably harmed as a result of MyCorporation's unlawful acts unless enjoined by this Court.

142.   The conduct herein complained of was extreme, outrageous, surreptitious, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights.

143.   Plaintiffs are entitled to an injunction restraining MyCorporation, and all persons acting in concert with them, from engaging in such further acts of unfair competition, including:

i.      Enjoining non-lawyer assistants of MyCorporation to sign trademark applications sought to be filed with the USPTO directly to customers, sign declarations on behalf of customers, waive privacy rights of customers, and dedicate copyright interests to the USPTO on behalf of customers who are not represented by a lawyer.

ii.    Enjoining MyCorporation from purchasing misleading advertising related to U.S. trademark filing services and related keywords for non-attorney trademark filing services offered by MyCorporation with respect to U.S. trademark matters.

### FIFTH CLAIM FOR RELIEF
PROFESSIONAL NEGLIGENCE
(Against Sweeney and DOES 1-50)

144.   Plaintiffs incorporate herein by reference paragraphs **1-143** above.

145.   MyCorporation is not a law firm in the United States and is not

authorized to practice law in any state.

146.   In addition, upon reason and belief, Sweeney owed a duty to Plaintiff Raj Abhyanker when MyCorporation.com collected more than $149 in legal service and government fees from Plaintiff Raj Abhyanker without depositing the funds into an IOLTA trust account and conducting a conflict check against existing customers and adverse parties for the PACERALERT trademark with customers of MyCorporation Business Services, Inc.

147.   Sweeney has breached her duty by purposefully engaging in the unauthorized practice of law with respect to the signing of the PACERALERT trademark on behalf of Plaintiff Raj Abhyanker using non-attorney staff while falsely implying that no legal advice was to be received in the "non-attorney" trademark filing service linked to a Google advertisements falsely implying that competent trademark filing services will be provided.

148.   Moreover, Sweeney breached her duty to Plaintiff Raj Abhyanker by not supervising non-lawyer assistants who fraudulently signed a declaration, waived privacy rights, and waived underlying copyrights in the federal trademark application for PACERALERT.

149.   In addition, Sweeney owed a duty to Plaintiff Raj Abhyanker to act at all times in good faith and in Plaintiff Raj Abhyanker's best interests, and had a duty, among other things, to perform the services for which her corporate entity

MyCorporation was retained with reasonable care and skill to prepare and file the PACERALERT trademark, to act in the Plaintiff Raj Abhyanker highest and best interests at all times, and to not expose Plaintiff Raj Abhyanker to unnecessary risk or peril.  As a licensed practitioner, Sweeney knew or should have known practices with respect to signing Declarations and documents before the United States Patent & Trademark Office.[9]

150.   By not supervising, and actively encouraging her non-lawyer staff to sign a declaration, sign away privacy, and disclaim copyright without properly informing  Plaintiff Raj Abhyanker in advance,  Sweeney exposed Plaintiff Raj Abhyanker to risk or peril for their PACERALERT trademark as described by the USPTO web page titled "Proper representation in trademark matters" (**Exhibit L**), including but not limited to (1) delaying and prolonging in the trademark application process, potentially leading to abandonment of the PACERALERT application, and jeopardizing the validity of any resulting registration.

151.   Sweeney each breach fiduciary duties to Plaintiff Raj Abhyanker by failing to properly supervise legal assistants, paid search specialists, and/or on-page marketing specialists in violation of 37 CFR §11.503 – Duty to supervise non-lawyers.   Specifically, Defendants each failed to supervise a non-practitioner assistant employed or retained by or associated with

---

[9] For example, **Exhibits S, T, U, and V** are ethics articles and official USPTO Rules in **Exhibit A and B**.

MyCorporation while being responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner.

152.   At all times mentioned here, Defendants failed to exercise the required standard of care and by failing have jeopardized the validity of the Plaintiffs' PACERALERT trademark.

153.   Further, as a direct and proximate result of the negligence, omissions, and/or intentional acts of Defendants, Plaintiff Raj Abhyanker have sustained damages, among other things loss in legal fees paid to MyCorporation in the amount of $149, the government fee of $275 and other amounts which will be determined according to proof at trial.

**SIXTH CLAIM FOR RELIEF**
BREACH OF FIDUCIARY DUTIES
(Against Sweeney and DOES 1-50)

154.   Plaintiffs incorporate herein by reference paragraphs **1-153** above.

155.   MyCorporation is not a law firm in the United States and is not authorized to practice law in any state.

156.   In addition, upon reason and belief, Sweeney owed a fiduciary duty to Plaintiff Raj Abhyanker when MyCorporation.com collected more than $149 in legal service and government fees from Plaintiff Raj Abhyanker without depositing the funds into an IOLTA trust account and conducting a conflict

check against existing customers and adverse parties for the PACERALERT trademark with customers of MyCorporation Business Services, Inc.

157.   Sweeney has breached her fiduciary duty by purposefully engaging in the unauthorized practice of law with respect to the signing of the PACERALERT trademark on behalf of Plaintiff Raj Abhyanker using non-attorney staff while falsely implying that no legal advice was to be received in the "non-attorney" trademark filing service linked to a Google advertisements falsely implying that competent trademark filing services will be provided.

158.   Moreover, Sweeney breached her fiduciary duty to Plaintiff Raj Abhyanker by not supervising non-lawyer assistants who fraudulently signed a declaration, waived privacy rights, and waived underlying copyrights in the federal trademark application for PACERALERT.

159.   In addition, Sweeney owed a fiduciary duty to Plaintiff Raj Abhyanker to act at all times in good faith and in Plaintiff Raj Abhyanker's best interests, and had a duty, among other things, to perform the services for which her corporate entity MyCorporation was retained with reasonable care and skill to prepare and file the PACERALERT trademark, to act in the Plaintiff Raj Abhyanker highest and best interests at all times, and to not expose Plaintiff Raj Abhyanker to unnecessary risk or peril.

160.   By not supervising, and actively encouraging her non-lawyer staff to

sign a declaration, sign away privacy, and disclaim copyright without properly informing  Plaintiff Raj Abhyanker in advance,  Sweeney exposed Plaintiff Raj Abhyanker to risk or peril for their PACERALERT trademark as described by the USPTO web page titled "Proper representation in trademark matters" (**Exhibit L**), including but not limited to (1) delaying and prolonging in the trademark application process, potentially leading to abandonment of the PACERALERT application, and jeopardizing the validity of any resulting registration.

161.   Sweeney each breach fiduciary duties to Plaintiff Raj Abhyanker by failing to properly supervise legal assistants, paid search specialists, and/or on-page marketing specialists in violation of 37 CFR §11.503 – Duty to supervise non-lawyers.   Specifically, Defendants each failed to supervise a non-practitioner assistant employed or retained by or associated with MyCorporation while being responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner.

162.   At all times mentioned here, Defendants failed to exercise the required standard of care and by failing have jeopardized the validity of the Plaintiffs' PACERALERT trademark.

163.   Further, as a direct and proximate result of the negligence, omissions,

and/or intentional acts of Defendants, Plaintiff Raj Abhyanker have sustained damages, among other things loss in legal fees paid to MyCorporation in the amount of $149, the government fee of $275 and other amounts which will be determined according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment as follows:

1.  Temporary and permanent injunctions as defined herein be entered in their favor and against all Defendants, and any company or entity in which Defendants have an ownership or beneficial interest, first temporarily and then permanently restraining and enjoining them, directly or indirectly, on their own or as a partner, or an employee from operating websites known as www.MyCorporation.com, www.mycropvault.com, www.registered-agent.com, www.taxact.com, or any other website that attempts to offer any legal services requiring signing documents constituting the practice of law including, but not limited to, U.S. incorporation services, and U.S. trademark filing and prosecution services including for trademark filings, trademark search, trademark watch, office actions, statements of use, oppositions, trademark watch, renewal, opposition, and litigation services.

2.  From further acts of false and misleading advertising and unfair competition that would damage or injure Plaintiffs.

3.  The Court find MyCorporation's acts of false and misleading advertising and unfair competition to be knowing and willful, and an exceptional case within the meaning of 15 U.S.C. §1117 and California law.

4.  Restitution as allowed under applicable statutes.

5.  Compensatory damages in an amount believed to be in excess of four million dollars ($4,000,000) to be determined at trial.  Plaintiffs' damages are continuing each day as they are unable to compete fairly due to Defendant' unlawful actions, and they will seek treble recovery of all additional damages they incur during the pendency of this lawsuit.

6.  Punitive damages in an amount to be determined at trial.

7.  Legal and equitable further relief as this court finds just and proper.

8.  Permanent exclusion from practice of law before the USPTO and the State of California of owner of MyCorporation Business Services, Inc.,  Deborah Sweeney.

9.  Order compelling the USPTO to follow its stated procedures for notification to affected applicants of an excluded marks for all trademarks in which government fees were paid by the excluded party (**Exhibit X**) including, but not limited notifications to the affected applicant or registrant that:

        i.    MyCorporation Business Services, Inc. and  Deborah Sweeney are  not  entitled  to  practice  before  the  USPTO  in  trademark

matters and, therefore, may not represent the applicant or registrant.

    ii.     Any trademarks and documents filed by MyCorporation Business Services, Inc. and/or Deborah Sweeney are *void ab initio*, meaning they were invalid from the start of any action taken by the excluded party.

    iii.  MyCorporation Business Services, Inc. non-lawyer assistants and/or Deborah Sweeney may not sign declarations on behalf of customers, sign checkboxes, pay government fees, prepare trademark applications, assist with responses to the USPTO's actions, authorize examiner's amendments or priority actions, conduct interviews with USPTO employees, or otherwise represent an applicant, registrant, or party to a proceeding before the USPTO.

    iv. All correspondence concerning the application or registration will be sent to the domestic representative if one has been appointed, or, alternatively, and in most circumstances, to the applicant or registrant at his/her address of record.

10. Plaintiffs be awarded costs, prejudgment interest and attorneys' fees pursuant to 15 U.S. Code § 7706 of the Federal Trade Commission Act for

exceptional case, and other applicable statutes.


Respectfully submitted this Monday January 8, 2018.


LEGALFORCE RAPC WORLDWIDE P.C.


/s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C.,
LegalForce, Inc., and
Raj V. Abhyanker

### JURY TRIAL DEMAND

Plaintiffs hereby request a jury trial for all causes of action alleged in this Complaint.

Respectfully submitted this Monday January 8, 2018.

LEGALFORCE RAPC WORLDWIDE P.C.

By   /s/ Raj V. Abhyanker_____
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C.,
LegalForce, Inc., and
Raj V. Abhyanker